IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DUANE PETTIT,                          )
                                       )
               Petitioner,             )
                                       )
v.                                     )     Civil Action No. 08-1225
                                       )     Judge Fischer
BRIAN COLEMAN, *et al.*,               )     Magistrate Judge Bissoon
                                       )
               Respondents.            )


**MEMORANDUM OPINION**

Petitioner Duane Pettit ("Petitioner") filed this Petition for Writ of Habeas Corpus on

September 4, 2008. (Docket No. 1). Petitioner challenges, under 28 U.S.C. § 2254, his 2004

convictions in the Court of Common Pleas of Washington County, Pennsylvania, on charges of

rape, 18 Pa. Cons. Stat. § 3121, involuntary deviate sexual intercourse ("IDSI"),

18 Pa. Cons. Stat. § 3123, and incest, 18 Pa. Cons. Stat. § 4302, for which he currently is serving

a sentence of seven-and-one-half to 15 years confinement. For the reasons stated below, this

petition will be denied.


**I. The Crimes**

The facts presented at Petitioner's criminal trial were summarized by the PCRA trial

court as follows:

> During a June 2003 weekend, [Petitioner's] child, [daughter] (age
> 11) came to stay with her father, [Petitioner], and her mother,
> Pamela Pettit, at 75 ½ West Chestnut Street, Washington,
> Pennsylvania . . . . [Daughter] has lived with her aunt, Patricia
> Lynn English, since 1994 when both [daughter] and her brother . . .
> were removed from her parents' home following allegations of

sexual abuse . . . . On Friday evening, [daughter] slept in a bed in the living room with her mother and father on either side of her. When Pamela Pettit fell asleep, [Petitioner] removed [daughter's] clothing as well as his, and then penetrated her vagina with his penis.

The next morning [daughter] woke up and ate breakfast in bed in the living room while watching television. Both [Petitioner] and Pamela Pettit were present in the house; however, only [Petitioner] was in the living room with [daughter]. [Petitioner] again took off both his and [daughter's] clothes and penetrated her vagina with his penis. On this occasion, [Petitioner] also put his penis in [daughter]'s mouth and forced her to perform oral sexual intercourse on him. [Daughter] did not mention these incidents to her mother because [Petitioner] said he would hurt her if she told anyone. That same evening [Petitioner] again removed both his and [daughter's] clothes and penetrated her vagina with his penis. Finally, on Sunday of the same weekend, [Petitioner] and Pamela Pettit hosted guests at their home where [Petitioner] was drinking alcohol. [Daughter] testified that her father again took off his and her clothes and penetrated her vagina with his penis.

Sunday evening, [daughter's] grandparents came and picked her up at her parent's [sic] home on West Chestnut Street. [Daughter] first reported the incidents to her teacher, Miss Zimarolli, approximately eight months later. On March 3, 2004, Washington County Children and Youth Services referred this case to the Washington City Police Department and Corporal Daniel Stanek. The victim, [daughter], made statements on March 24, 2004 that her natural father, [Petitioner], had sexual intercourse with her and forced her to perform sexual intercourse on him over three consecutive days in June 2003. Following interviews with the police and Children and Youth Services, [daughter] was transported to Children's Hospital in Pittsburgh, Pennsylvania for a medical evaluation. Dr. Janet Squires, M.D., examined [daughter] and concluded that the exam could neither support nor rule out her report of sexual abuse.

PCRA Trial Ct. Op. at 1-2, and n.1.

## II. Claims

Petitioner explicitly raises the following claims for relief. First, Petitioner alleges ineffective assistance of trial and appellate counsel based on trial counsel's failure to object to the prosecutor vouching for – and exhibiting her personal opinion regarding – the credibility of the victim's testimony during closing arguments. Second, Petitioner complains of prosecutorial misconduct with respect to the prosecutor's elicitation of information regarding Petitioner's incarceration from a defense witness during trial. Third, Petitioner claims that counsel at his criminal trial did not listen to any of his input during voir dire. Finally, Petitioner argues that the trial judge improperly ordered him to register with the state as a sex offender for the rest of his lifetime.[1]

## III. Procedural Issues

Before this Court can address the merits of Petitioner's claims, it is necessary to examine whether this petition fulfills the applicable procedural requirements, as set forth in the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").

## A. AEDPA's Statute of Limitations

The first consideration in reviewing a federal habeas corpus petition is whether the petition was timely filed under the one-year limitations period applicable to such petitions. In

---

[1] Upon review of the record, and given the unclear drafting of the petition, it appears that Petitioner might be attempting to raise claims that are not addressed by Respondents in their answer. Out of an abundance of caution, those claims are addressed in Part V of this opinion, infra.

this regard, the federal habeas corpus laws impose a one-year limitations period applicable to

state prisoners, which provides as follows.

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d) (as amended). Respondents concede that all of Petitioner's claims are

timely under AEDPA's statute of limitations. (Docket No. 10, at 3-4)

**B. Exhaustion**

It is next necessary to determine whether Petitioner's claims have been adequately exhausted in the state courts and, if not, whether the circumstances of his case are sufficient to excuse his procedural default.

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust available state court remedies before seeking federal habeas corpus relief. To comply with the exhaustion requirement, a state prisoner first must have fairly presented his constitutional and federal law issues to the state courts through direct appeal, collateral review, state habeas proceedings, mandamus proceedings, or other available procedures for judicial review. See, e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996) (abrogated on other grounds by Beard v. Kindler, 130 S.Ct. 612, 618 (2009)); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest available court before exhaustion will be considered satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999); Lambert v. Blackwell, 387 F.3d 210, 234 (3d Cir. 2004). The petitioner has the burden of establishing that the exhaustion requirement has been met. Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995). A petitioner shall not be deemed to have exhausted state remedies,

however, if he has the right to raise his claims by any available state procedure.

28 U.S.C. § 2254(c).


## C. State Court Procedural Default

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the "procedural default doctrine." Gray v. Netherland, 518 U.S. 152, 162 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor, 96 F.3d at 678; Sistrunk v. Vaughn, 96 F.3d 666, 675 (3d Cir. 1996).   Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system and, in turn, it is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment.  Coleman, 501 U.S. at 750.

The United States Supreme Court has held that where a petitioner has to follow state procedure within the required time period, the "federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice."  Id.; see also Wainwright v. Sykes, 433 U.S. 72, 86-87 (1977) (failure to follow state's procedural rules results in procedural default, which bars federal review of petitioner's claims unless he can show cause and prejudice); Hull v. Freeman, 991 F.2d 86, 90-91 (3d Cir. 1993) (same).  The Court in Coleman further stated that it recognized "the

important interest in finality served by state procedural rules and the significant harm to the States that results from the failure of federal courts to respect them." 501 U.S. at 750.

Finally, the United States Court of Appeals for the Third Circuit has held that a petition containing exhausted and unexhausted but procedurally barred claims is not a mixed petition requiring dismissal under Rose v. Lundy, 455 U.S. 509 (1982). See Wenger v. Frank, 266 F.3d 218, 227-28 (3d Cir. 2001). Instead, the Court of Appeals instructs that a district court should review the merits of the exhausted claims, but must not decide the merits of the claims that are barred under the procedural default doctrine. Id. at 228.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. Sistrunk, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an "independent" and "adequate" state ground sufficient to invoke the procedural default doctrine even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 516 U.S. 1151 (1996); Carter, 62 F.3d at 595. The procedural default doctrine applies only when a state procedural rule is consistently and regularly applied. Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988)); see also Doctor, 96 F.3d at 684 (the state rule must be firmly established and regularly followed before it can be considered an independent and adequate state law ground sufficient to foreclose federal court review under the procedural default doctrine).

A petitioner whose constitutional claims have not been addressed on the merits due to procedural default can overcome the default, thereby allowing federal court review, if he or she can demonstrate either: (1) "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law; or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." Coleman, 501 U.S. at 750; Carter, 62 F.3d at 595. The Supreme Court has defined "cause" as "some objective factor external to the defense." Murray v. Carrier, 477 U.S. 478, 488 (1986). "[A] showing that the factual or legal basis for a claim was not reasonably available to counsel . . . or . . . some interference by officials" are two examples, but not an exhaustive list. Id.

The second exception to the procedural default rule arises when a petitioner demonstrates that failing to allow his claims to proceed would result in a fundamental miscarriage of justice. See Schlup v. Delo, 513 U.S. 298, 320-22 (1995) (decided in the context of successive petitions). To show a fundamental miscarriage of justice, a petitioner must demonstrate that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Id. at 321 (quoting Murray, 477 U.S. at 496). Under this standard, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Schlup, 513 U.S at 324. Once such evidence is presented, a petitioner must then show that "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence." Id. at 327.

**D. Procedural Analysis**

Respondents argue that Petitioner's claims with respect to his alleged lack of input in the voir dire process were procedurally defaulted in his appeal from the dismissal of his 2007 PCRA petition.[2] (Docket No. 10, at 6-7). Framing the issue as one of ineffective assistance of counsel, and invoking Rule 2119 of the Pennsylvania Rules of Appellate Procedure, the Superior Court dismissed Petitioner's claim because he had failed to develop it sufficiently. PCRA Ap. Ct. Op. at 2. Additionally, the Superior Court found that Petitioner's ineffective assistance of counsel claim with respect to trial counsel's failure to object to statements during closing arguments was waived under this procedural rule as well.[3] Id. at 3.

Rule 2119 of the Pennsylvania Rules of Appellate Procedure requires an appellant to present claims that are sufficiently developed for the Superior Court's review. See Commonwealth v. Hardy, 918 A.2d 766, 771 (Pa. Super. Ct. 2007). Claims raised on appeal in the courts of Pennsylvania must be supported by references to relevant portions to the record, as well as citations to pertinent legal authorities. Pa. R. Ap. P. 2119(b) and (c). The federal courts have recognized since at least 2004 that the dismissal of an insufficiently articulated claim under

---

[2] This is claim three, above. See Part II, supra.

[3] This is claim one. See Part II, supra. The PCRA trial court found that this claim had been waived under Rule 1925 of the Pennsylvania Rules of Appellate Procedure. This Rule requires an appellant to file a Concise Statement of Errors Complained of on Appeal – which the trial court determined to be too vague for it to address Petitioner's ineffective assistance of counsel claim – thus waiving it under that Rule. PCRA Trial Ct. Op. at 8. (citing Commonwealth v. Dowling, 778 A.2d 683, 686-87 (Pa. Super. Ct. 2001) (holding that "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no Concise Statement at all")). The waiver of claims not sufficiently articulated in a Rule 1925(b) statement is an independent and adequate state ground that "constitutes a procedural default in federal court." See Miles v. Tomaszewski, No. Civ.A. 04-3157, 2004 WL 2203726, at *3 (E.D. Pa. Sept. 14, 2004), approved and adopted by 2004 WL 2457732 (E.D. Pa. Oct. 27, 2004).

Rule 2119 was an independent and adequate state law ground that constituted procedural default in a federal habeas proceeding.  See, e.g., Bennett v. Varner, No. 03-3213, 2004 WL 302313, at *14 (E.D. Pa. Feb. 13, 2004); see also Kiron v. Klopotoski, 620 F. Supp. 2d 674, 683-84 (E.D. Pa. 2008) (citing cases).  Consequently, as the Superior Court recognized, Petitioner's claims with respect to voir dire of the jury at his criminal trial, and ineffective assistance due to counsel's failure to object to statements made by the prosecution during closing argument at his criminal trial, are procedurally defaulted.  Additionally, there is no indication in the record that Petitioner's failure to comply with the above state court rules was due to any sort of "cause," or that he meets the "miscarriage of justice" standard.  As such, these claims will be denied.

To the extent that Petitioner attempts to characterize his alleged inability to engage in the voir dire process as a Fourteenth Amendment due process violation, his claim similarly fails due to procedural default.  The PCRA trial court found that Petitioner raised this claim for the first time at the PCRA level, and was thus barred by the PCRA itself, which prohibits the grant of relief for a claim if "petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state post-conviction proceeding."  42 Pa. Cons. Stat. Ann. § 9544(b); see also PCRA Trial Ct. Op. at 7-8.  Such a rule clearly is independent of federal law, is adequate to support the judgment, and is well recognized to have been consistently and regularly applied in non-capital cases.  Johnson v. Mechling, 541 F. Supp. 2d 651, 679 (M.D. Pa. 2008) (citing cases).

There is no indication in the record that Petitioner ever raised the issue of his lack of input during voir dire prior to his 2007 PCRA petition.   There also is no explanation from Petitioner regarding his failure to do so, let alone an indication that he suffered "cause."  As

such, this claim, to the extent that it is raised, will be denied as it has been procedurally defaulted.

## IV.  MERITS

In the case *sub judice*, Respondents appear to concede that Petitioner has properly exhausted his claims with respect to alleged prosecutorial misconduct regarding the elicitation by the prosecution of testimony of a defense witness that Petitioner had been incarcerated.[4]  (Docket No. 10, at 13).  Accordingly, it is necessary to analyze that claim under the appropriate standard of review.

### A.  Standard of Review under Section 2254

28 U.S.C. § 2254 allows a person in custody due to the judgment of a state court to seek a writ of habeas corpus based "on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  <u>See</u> 28 U.S.C. § 2254(a).

In describing the role of federal habeas proceedings, the Supreme Court of the United States noted:

> [I]t must be remembered that direct appeal is the primary avenue for review of a conviction or sentence. . . .  The role of federal habeas proceedings, while important in assuring that constitutional rights are observed, is secondary and limited.  Federal courts are not forums in which to relitigate state trials.

---

[4] This is claim two, above.  <u>See</u> Part II, <u>supra</u>.

Barefoot v. Estelle, 463 U.S. 880, 887 (1983) (superseded by statute on other grounds as recognized in Slack v. McDaniel, 529 U.S. 473, 480-81 (2000)).

The AEDPA has further "modified a federal habeas court's role in reviewing State prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law."  Bell v. Cone, 535 U.S. 685, 693 (2002).  Amended section 2254 of the federal habeas corpus statute provides the standard of review for federal court review of state court criminal determinations and provides, in relevant part, as follows:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"A state-court decision is 'contrary to' clearly established federal law if the state court (1) 'contradicts the governing law set forth in [the Supreme] Court's cases' or (2) 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a [different] result.'"  Blackwell, 387 F.3d at 234 (quoting Williams v. Taylor, 529 U.S. 362, 405-06 (2000)).  Few state court decisions will be "contrary to" Supreme

Court precedent. "'[C]learly established Federal law' should be determined as of the date of the relevant state-court decision." Greene v. Palakovich, 606 F.3d 85, 87 (3d Cir. 2010).

The federal habeas court more often must determine whether the state court adjudication was an "unreasonable application" of the Supreme Court's precedent. "A state-court decision 'involve[s] an unreasonable application' of clearly established federal law if the state court (1) 'identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case'; or (2) 'unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply.'" Blackwell, 387 F.3d at 234 (quoting Williams, 529 U.S. at 407). It is important to note that this standard is different from finding that the state court applied clearly established federal law *incorrectly*. "The unreasonable application test is an objective one – a federal court may not grant habeas relief merely because it concludes that the state court applied federal law erroneously or incorrectly." Lambert v. Beard, 633 F.3d 126, 133 (2011) (quoting Jacobs v. Horn, 395 F.3d 92, 100 (3d Cir. 2005)). Instead, the application of the law by the state court must also be *unreasonable*. Lambert, 633 F.3d at 133. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

Moreover, a federal court must accord a presumption of correctness to a state court's factual findings, which a petitioner can rebut only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). If a state trial court and appellate court make conflicting factual

findings, the habeas court must defer to the findings of the higher court – regardless of the propriety of those findings under state law – unless they are rebutted by clear and convincing evidence. See Rolan v. Vaughn, 445 F.3d 671, 680 (3d Cir. 2006). Petitioner's claims will be reviewed in accordance with these standards.

**B. Application of the Merits Standard**

During Petitioner's 2004 criminal trial, the defense called Jerry W. Allen ("Allen"), Petitioner's former employer, to testify as an alibi witness for the period of time in question. On direct examination, Allen testified that Petitioner had worked for him on Saturdays and Sundays for a long period of time – including the time period during which the crimes took place. See Trial Tr. at 124-26. On cross examination, the following occurred:

| | |
|---|---|
| Commonwealth: | Mr. Pettit currently works for you? |
| Allen: | Not now. |
| Commonwealth: | When did he stop working for you? |
| Defense counsel: | Your Honor, I object again. |
| Allen: | When he went to jail. |
| The Court: | There was an objection. Please approach. |

Id. at 130-31.

A sidebar occurred, during which it was revealed that the Commonwealth asked the question to determine the timeframe of Petitioner's employment with Allen. See Trial Tr. at 131-35; see also 2006 Ap. Ct. Op. at 11. Petitioner moved for a mistrial, which was denied.

Trial Tr. at 135. However, the trial court struck the question, and Allen's response, from the record. Additionally, with defense counsel's consent, the trial judge issued a curative instruction, cautioning the jury that it must disregard the response, and that it could not draw any adverse inference against Petitioner due to the fact that he had been incarcerated. Id. at 132-135

Petitioner's claim with respect to the alleged elicitation of improper testimony was reviewed on direct appeal by the Superior Court, which determined that the occurrence did not deprive Petitioner of a fair trial. See 2006 Ap. Ct. Op. at 10-13. That court determined that: (1) the record did not support the conclusion that the prosecution intentionally elicited the response from Allen; and (2) the prosecution did not attempt to exploit the response for the benefit of its case. Id. at 11. Recognizing that it was bound to presume that the jury followed the trial judge's instructions to disregard Allen's testimony, and finding that Petitioner had adduced no evidence that the trial court had abused its discretion in giving the instruction, or that Allen's statement had denied him a fair trial, the Superior Court held that that claim was without merit. Id. at 11-12.

Based on the record before this Court, the factual determination of the Superior Court that the prosecution inadvertently elicited the testimony in question is supported by the record, and thus is entitled to deference.[5]

Petitioner's claim that the jury was exposed to harmful, prejudicial information elicited by the prosecution is properly brought under the Due Process Clause of the Fourteenth Amendment. Where that information "so infuse[s] the trial with unfairness as to deny due process of law," the verdict must be overturned. Estelle v. McGuire, 502 U.S. 62, 75 (1991)

---

[5] Indeed, Petitioner provides no evidence – clearly convincing or otherwise – to support a contrary conclusion. See generally (Docket No. 3)

(internal citations omitted). Such a violation takes place only when the "fundamental conceptions of justice which lie at the base of our civil and political institutions, and which define the community's sense of fair play and decency" are implicated. <u>Dowling v. United States</u>, 493 U.S. 342, 353 (1990) (internal citations and quotations omitted). Additionally, in deciding whether a petitioner was denied due process of law, a court must consider the evidence in light of any limiting instructions given at trial. <u>Id.</u>

While it is clear that evidence of Plaintiff's incarceration should not have been elicited by the prosecution, the conclusion that it was inadvertent is entitled to deference. Additionally, the trial judge issued detailed curative instructions to the jurors, directing them not to consider the statement, and struck the offending statement from the record. As a general rule, a jury is presumed to have followed a judge's instructions. <u>Cf</u>. <u>Richardson v. Marsh</u>, 481 U.S. 200, 211 (1987) (discussing this presumption in the context of an alleged violation of the Confrontation Clause). Petitioner provides no evidence whatsoever that the jury failed to adhere to this instruction, nor is there any indication that he was denied a fair trial.[6] Accordingly, this claim will be denied.

Next, Petitioner attacks the trial court's order that he be required, for the rest of his life, to register as a sex offender. (Docket No. 1, at 6). The requirement that a convicted sex offender register with the state has been held by numerous courts merely to be a collateral consequence of conviction, and is not cognizable under section 2254. <u>See, e.g.</u>, <u>Williams v. Dist. Att'y of</u>

---

[6] Indeed, given the absolute dearth of evidence in the record supporting this claim, the undersigned concludes that it would have survived *de novo* review. <u>See, e.g.</u>, (Docket No. 3).

Allegheny Cnty., No.10-353, 2010 WL 4388073, at *8-*9 (W.D. Pa. Oct. 29, 2010) (Lenihan, Mag.J) (citing cases).  As such, this claim will be denied.[7]

## V. Additional Claims

It appears from the language of the petition that Petitioner may be attempting to raise claims for relief that were not addressed by Respondents.  Out of an abundance of caution, they are addressed below.

## A. **Brady** Claim

In his PCRA petition, Petitioner argues that the prosecution withheld exculpatory evidence.  See PCRA Trial Ct. Op. at 6-7.  While such a claim, if true, would be cognizable under section 2254 as a violation of due process, see, e.g., Brady v. Maryland, 373 U.S. 83 (1963), the PCRA trial court noted that Petitioner had not indicated what evidence, if any, had been suppressed by the prosecution, and found the claim waived under Rule 1925 of the Pennsylvania Rules of Appellate Procedure.  PCRA Trial Ct. Op. at 6-7.  An independent review of the record by this Court similarly reveals no suppressed evidence, and merely emphasizes the propriety of the PCRA trial judge's conclusion with respect to this issue.  As such, for the reasons stated in Part III.D of this opinion, supra, this claim, to the extent that it is raised, has been procedurally defaulted, and will be denied.

---

[7] Respondents argue that this claim also is procedurally defaulted.  (Docket No. 10, at 10).  As such a claim, procedurally defaulted or not, is not cognizable under section 2254, it is unnecessary for this Court to address this argument.

**B. Ineffective Assistance of Counsel**

The next possible claim is one of ineffective assistance for trial counsel's failure to introduce a medical examination of the victim into evidence at trial. This examination was performed on June 24, 2004 – about nine months after the several sexual assaults – apparently for the purposes of determining whether an assault had occurred. The results of the exam "neither support[ed] nor rule[d] out concerns of abuse." See Dr. Squires's Report of Mar. 24, 2004 at 1.

Petitioner's counsel did not attempt to enter this report into evidence at trial, believing that the physician who wrote the report could be called to testify to explain its contents, and then provide testimony that, ultimately, would have been harmful to Petitioner's case. See Post Sentencing Mot. Hearing Tr., at 15. He indicated that this had been his experience at other trials. Id. at 11. This Court notes that the examination took place about nine months after the abuse occurred, diminishing the possible benefit that the inconclusive results contained within the report could have had for Petitioner's defense.

Despite the general rule in the state courts of Pennsylvania that ineffective assistance of counsel claims in criminal cases must be brought during collateral proceedings, see Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), Petitioner appears to have properly brought this claim on direct appeal. See, 2006 Superior Ct. Op. at 5. Addressing his claims on the merits, the Superior Court found that trial counsel had not behaved deficiently with respect to this issue, and denied relief. Id. at 8-9.

The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." Lockhart v. Fretwell, 506 U.S. 364, 368 (1993) (quoting Strickland v. Washington,

466 U.S. 668, 684 (1984)).  The Supreme Court has formulated a two-part test for determining

whether counsel rendered constitutionally ineffective assistance: (1) counsel's performance was

unreasonable; and (2) counsel's unreasonable performance actually prejudiced the defense.

Strickland, 466 U.S. at 687.  To determine whether counsel performed below the level expected

from a reasonably competent attorney, it is necessary to judge counsel's challenged conduct on

the facts of the particular case, viewed at the time of counsel's conduct.  Id. at 690.

     The first prong of the Strickland test requires a defendant to establish that his or her

attorney's representation fell below an objective standard of reasonableness by committing errors

so serious that he or she was not functioning as the "counsel" guaranteed by the Sixth

Amendment.  Strickland, 466 U.S. at 688.  A court must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance; that is, the

defendant must overcome the presumption that, under the totality of the circumstances, the

challenged action "might be considered sound trial strategy."  Id. at 689.  The question is not

whether the defense was free from errors of judgment, but whether counsel exercised the

customary skill and knowledge that normally prevailed at the time and place.  Id.

     The second prong requires a defendant to demonstrate that counsel's errors deprived him

or her of a fair trial and the result was unfair or unreliable.  Id.  To prove prejudice, a defendant

must show that there is a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  Id. at 694.  A "reasonable probability" is one

that is sufficient to undermine confidence in the outcome.  Id.  It is well established that the test

for ineffective assistance of counsel under Pennsylvania law is identical to the Strickland test.

See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2003).

Upon review of the law and the record, it is clear that the Superior Court's adjudication of this issue was not unreasonable under Strickland, and is entitled to AEDPA deference. There is no indication that counsel's representation of Petitioner at his criminal trial with respect to this issue was so deficient as to deprive him of his rights under the Sixth Amendment. Accordingly, this claim, to the extent that it is made, will be denied.

## C. The Prosecution's Statements During Closing Arguments

Finally, Petitioner may be attempting to raise a claim of denial of due process with respect to the prosecution's statements during closing arguments vouching for the credibility and honesty of the victim.[8]  This issue was first raised on Petitioner's direct appeal from his conviction, and was found to have been waived, pursuant to Rule 302(a) of the Pennsylvania Rules of Appellate Procedure. This Rule states, in unmistakable terms, that "[i]ssues not raised in the lower court are waived and cannot be raised on appeal." Pa. R. Ap. P. 302(a).

Rule 302(a) has been held to be an independent and adequate state rule for the purposes of habeas review of non-capital cases. See, e.g., O'Halloran v. Ryan, 704 F. Supp. 70, 74 (E.D. Pa. 1989)), aff'd, 887 F.2d 262 (3d Cir. 1989) (Table), cert. denied, 494 U.S. 1035 (1990). A review of the record indicates that at no time during trial did Petitioner's counsel object to the prosecution's closing arguments. The Superior Court's application of this Rule was consistent with prior cases. See, e.g., Commonwealth v. Fowler, 893 A.2d 758, 764 (Pa. Super. Ct. 2006).

---

[8] This arises from the same occurrence which led to claim one.  See Part II, supra.

Consequently, this claim, to the extent that it is made, has been procedurally defaulted, and will be denied.[9]

**V.  Certificate of Appealability**

With respect to Petitioner's claims that were denied due to procedural default, a certificate of appealability will be denied because jurists of reason would not find it debatable whether these claims were procedurally defaulted.  <u>See</u>, <u>e.g.</u>, <u>Slack</u>, 529 U.S. at 484 (explaining standard for grant of a certificate of appealability where court does not address petition on the merits but on some procedural basis).  Additionally, with respect to Petitioner's claims that were denied on the merits, a certificate of appealability will be denied, as Petitioner has failed to make "a substantial showing of the denial of a constitutional right."  <u>See</u> 28 U.S.C. § 2253(c)(2).

An appropriate order to follow.

Dated:  September 20, 2011                    By the Court:

                                             s/Nora Barry Fischer
                                             NORA BARRY FISCHER
                                             UNITED STATES DISTRICT JUDGE

---

[9] Petitioner indicates that some of his claims may be more fully developed on the back of his petition.  <u>See</u> (Docket No. 3, at 6-7).  However, the scanned copy of the instant petition, which currently is on the Court's electronic docket, does not show the reverse sides of filings, and this Court cannot locate the original.  While a review of the record does not readily reveal the existence of any cognizable, procedurally proper claims that were not addressed above, this Court will entertain a timely motion for reconsideration, pursuant to Rule 59 of the Federal Rules of Civil Procedure, provided that Petitioner is able to demonstrate that additional claims were raised in his petition.

cc:
**DUANE PETTIT**
GB-0388
SCI Fayette
Box 9999
LaBelle, PA 15450-9999

Counsel of record